AO-106 (Rev: 06/09)-Application for Search Warrant

# FILED

FEB 2 6 2025

Heidi D. Campbell, Clerk
U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT

for the

Northern District of Oklahoma

In the Matter of the Search of )
Silver 2006 Lexus ES 330, Bearing VIN ) Case No. 25-mj-139-MTS
JTHBA30G765163694, Currently Located at Dunlap )
Wrecker, 410 West 5th Street, Claremore, Oklahoma ) **FILED UNDER SEAL**
74017 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment "A"

located in the __Northern__ District of __Oklahoma__, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| **18 U.S.C. §§ 1151, 1153, and 1112** | **Involuntary Manslaughter in Indian Country** |

The application is based on these facts:
**See Affidavit of SA Thomas S. Huse, attached hereto.**

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

SA Thomas S. Huse, FBI
*Printed name and title*

Subscribed and sworn to by phone.

Date: 2-26-2025

City and state: Tulsa, Oklahoma

_____
*Judge's signature*

Mark T. Steele, U.S. Magistrate Judge
*Printed name and title*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In the Matter of the Search of the Silver 2006 Lexus ES 330, Bearing VIN JTHBA30G765163694, Currently Located at Dunlap Wrecker, 410 West 5th Street, Claremore, Oklahoma 74017 | Case No. _____<br><br>**Filed Under Seal** |

### Affidavit in Support of an Application
### Under Rule 41 for a Warrant to Search and Seize

I, Thomas S. Huse, being first duly sworn under oath, depose and state:

### Introduction and Agent Background

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant to search a Silver Lexus ES 330, bearing vehicle identification number (VIN) JTHBA30G765163694, bearing Oklahoma license plate QYJ057, currently located at Dunlap Wrecker, 410 West 5th Street, Claremore, Oklahoma 74017, as described in Attachment A, for evidence of violations of Title 18 United States Code, Sections 1151, 1153, and 1112, Involuntary Manslaughter in Indian Country which are more specifically described in Attachment B of this affidavit.

2. I am a federal law enforcement officer as defined under Federal Rule of Criminal Procedure 41(a)(2)(C) and am authorized to request this search warrant because I am a government agent who is engaged in enforcing federal criminal laws and I am within the category of officers authorized by the Attorney General to

request such a warrant. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since August 2010. I am currently assigned to the Tulsa Resident Agency of the FBI's Oklahoma City Field Office. My primary duties as a Special Agent with the FBI include investigating crimes occurring in Indian Country, including but not limited to, homicides, assaults, domestic violence, armed robberies, violent crimes, and threats of violence. During the course of these investigations, I have participated in the review of search warrant returns involving vehicles and other forms of evidence.

3. I am familiar with the facts and circumstances of this investigation. The facts set forth in this affidavit are based on my personal observations, knowledge obtained from other law enforcement officers, my review of documents related to this investigation, conversations with others who have personal knowledge of the events and circumstances described herein, and a review of open-source information including information available on the Internet. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact I or others have learned during the course of this investigation.

4. Based on my training, research, experience, and the facts as set forth in this affidavit, I respectfully submit that there is probable cause to search the vehicle described in Attachment A, for evidence of violations of Title 18 United States Code, Sections 1151, 1153, and 1112 (Involuntary Manslaughter in Indian Country), as described in Attachment B.

## Jurisdiction

5. "[A] warrant may be issued to search for and seize any property that constitutes evidence of a criminal offense in violation of the laws of the United States." 18 U.S.C. § 3103a.

6. The requested search is related to the following violations of federal law:

    a. Title 18, United States Code, Section 1112 provides:

        i. Manslaughter is the unlawful killing of a human being without malice. It is of two kinds: Voluntary – Upon a sudden quarrel or heat of passion. Involuntary – in the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death.

    b. Title 18, United States Code, Section 1151 provides:

        i. Except as otherwise provided in sections 1154 and 1156 of this title, the term "Indian Country," as used in this chapter, means (a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether

within or without the limits of a state, and (c) all Indian

allotments, the Indian titles to which have not been extinguished,

including rights-of-way running through the same.

c. Title 18, United States Code, Section 1153 provides, in relevant part:

    i. Any Indian who commits against the person or property of

    another Indian or other person any of the following offenses,

    namely, … manslaughter, … within the Indian country, shall be

    subject to the same law and penalties as all other persons

    committing any of the above offenses, within the exclusive

    jurisdiction of the United States.

7. Venue is proper because the person or property described in this affidavit is located within the Northern District of Oklahoma. Fed. R. Crim. P. 41(b)(1).

## Probable Cause

8. On February 8, 2025, at approximately 7:08pm, Oklahoma Highway Patrol (OHP) Troopers responded to a multi-vehicle collision on Interstate 44, also known as Will Rogers Turnpike, near Mile Marker 257 in Rogers County, Oklahoma. This location is within the boundaries of the Northern District of Oklahoma and Cherokee Nation.

9. Upon arrival to the scene, OHP located a black 2004 Ford Escape in the ditch area to the north of Interstate 44. The 2004 Ford Escape had extensive rear-end damage and appeared to have rolled multiple times. OHP approached the vehicle

and observed a man, later identified by OHP as M.G., lying outside of the vehicle.
OHP checked M.G. for a pulse and did not detect a pulse. Pafford Emergency
Medical Services personnel pronounced M.G. deceased at the scene at
approximately 7:15pm.

10. OHP then located a silver Lexus ES 330, bearing VIN
JTHBA30G765163694 and Oklahoma license plate QYJ0572006, further westbound
on Interstate 44. When OHP arrived at the vehicle, a Rogers County Deputy was
assisting the driver, identified as AARON DOUGLAS BRIXEY (BRIXEY), out of
the vehicle. The vehicle had extensive front-end damage. BRIXEY stated he was not
injured, and OHP assisted BRIXEY in moving him to an OHP vehicle and away
from the roadside for his safety. When asked by OHP what happened, BRIXEY
stated that he did not remember. OHP immediately detected the odor of an alcoholic
beverage emitting from BRIXEY's person. Additionally, BRIXEY was very
unsteady on his feet and required significant assistance getting into the OHP vehicle.
Lastly, while taking photographs of the scene, OHP observed three beer cans in plain
view located in the front floorboard of BRIXEY's vehicle. OHP determined one beer
can was empty and two were unopened. The two unopened beer cans were cold to
the touch and there was a strong odor of an alcoholic beverage throughout
BRIXEY's vehicle.

11. After assisting BRIXEY to an ambulance, OHP heard a loud commotion
coming from the ambulance. Upon arriving at the ambulance, OHP observed
BRIXEY fighting with paramedics and striking their equipment with his hands and

feet. OHP handcuffed BRIXEY, detained him, and placed him in an OHP vehicle. BRIXEY began screaming, banged his head on the inside of the OHP vehicle, and attempted to kick the windshield. BRIXEY's emotions fluctuated from elevated to calm and back to elevated, and he had bloodshot, water eyes. OHP did not perform any Standardized Field Sobriety Tests due to BRIXEY's elevated emotions and unsteadiness on his feet. Based on the totality of the circumstances, OHP believed BRIXEY was under the combined influence of alcohol and drugs.

12. Further investigation by OHP revealed BRIXEY struck two additional vehicles prior to the collision with M.G.'s vehicle. BRIXEY was subsequently arrested at the scene by OHP and transported to Rogers County Jail.

13. BRIXEY advised OHP he was a member of Choctaw Nation of Oklahoma, a federally recognized Indian tribe. On February 10, 2025, Choctaw Nation of Oklahoma confirmed to OHP that BRIXEY was a member of Choctaw Nation of Oklahoma, as of February 15, 2017 (Membership Number CN055613), and has a Certificate of Degree of Indian Blood, issued February 13, 2017.

14. A registration query of the 2006 Lexus ES 330, bearing VIN JTHBA30G765163694 and Oklahoma license plate QYJ057, revealed it was registered to BRIXEY.

a. Currently, the Vehicle is located at Dunlap Wrecker, 410 West 5th Street, Claremore, Oklahoma 74017. OHP seized the vehicle incident to arrest on February 8, 2025.

**Technical Background Information Regarding the Vehicle and Its Infotainment and Telematics Systems**

15. Based on my training and experience, as well as discussions with other experienced law enforcement officers and witnesses, I have learned that:

    a. Many modern motor vehicles are equipped with sensors, cameras, transmitters, and electronic control units (ECUs) to monitor and manage vehicle operations, track vehicle movement, and exchange information with other vehicles and infrastructure.

    b. "ECU" is a generic term applied to any embedded computer that controls one or more electrical systems within a vehicle. ECUs are typically installed in a vehicle by the original equipment manufacturer during the manufacturing process. There are many types of ECUs, and as vehicles have more features each year, the number of ECUs in each motor vehicle increases. Newer motor vehicles can integrate as many as 150 ECUs, ensuring, in theory, that each part of the motor vehicle is running properly. Some examples of common ECUs include the Engine Control Module, Transmission Control Module, Brake Control Module, and Suspension Control Module, as well as the Telematics Control Unit and Infotainment Control Unit.

    c. The infotainment and telematics systems in motor vehicles are not the same as "black box" recorders. Black box recorders are called event data recorders (EDRs) or crash data recorders. These black box recorders

can record vehicle speed, engine speed, steering angle, throttle position, braking status, force of impact, seatbelt status, and airbag deployment. In 2006, the US National Highway Traffic Safety Administration (NHTSA) adopted regulations requiring EDRs to uniformly collect certain crash data to assist crash investigators with accident reconstruction efforts. In 2012, NHTSA proposed requiring manufacturers to install EDRs in all new cars and trucks, but in 2019, the NHTSA withdrew the proposal because automakers have voluntarily installed the devices in nearly all vehicles.

d. These systems also enable motor vehicles to interface with various types of mobile devices to facilitate the use of applications, including third-party navigation, wireless telephone, multimedia streaming, and the like. To perform these computing functions, modern motor vehicles collect, process, and store significant volumes of data.

e. Two commonly installed ECUs within motor vehicles are infotainment and telematics systems—sometimes referred to as the Telematics Control Unit and the Infotainment Control Unit. These systems typically retain large amounts of user data within the vehicle.

f. A vehicle's infotainment system combines hardware and software to provide entertainment features. Many infotainment systems allow drivers and passengers to connect their handheld electronic devices to the vehicle. When connected, the driver and/or passengers may gain access to, for

example, Global Positioning System (GPS) navigation, video players, music streaming, voice calling, texting, and traffic data. Many systems enable talking hands-free with Bluetooth connectivity, listening to music, watching videos, or pulling up a mapped route to a destination. Many of these features are accessible via the (usually interactive) console located on the front dashboard of the vehicle.

g. A vehicle's telematics system typically collects and stores diagnostic data from various systems (other ECUs) within the vehicle, including historical navigation points, speed, and event data. Historical event data may include information regarding when the car's trunk, doors, and windows opened and closed, when headlights turned on and off, and when gears changed or brakes were engaged.

h. The main difference between the infotainment and telematics systems is that the infotainment system is about entertainment for the occupants of the vehicle, and the telematics system is for collecting and reporting (transmitting) information—such as vehicle use data, maintenance requirements, and automotive servicing—about the vehicle. Typical telematics data may include turn-by-turn navigation, remote access, emergency calling, and maintenance notifications. Examples of vehicle telematics systems include General Motors' OnStar, BMW's "Assist," and Mercedes' "mbrace." Some of these systems are integrated multimedia navigation and telematics systems in one (combined

infotainment/telematics systems), like Toyota's "Entune" and Ford's "Sync."

i. The data generated, collected, transmitted, and retained by motor vehicles can provide valuable information in law enforcement investigations of crimes. For example, many infotainment systems support the importation of content and other data information from a particular user's mobile device. Such data may include content that may provide attribution to particular user(s), including mobile device identifiers, wireless telephone numbers, user account details, passwords, user voice profiles, contact lists, call logs, text messages, pictures, e-mail, videos, web history, GPS coordinates, and other historical navigation information.

j. I am aware that the computers (ECUs) within many motor vehicles store data for prolonged periods of time. Furthermore, even after a previously-connected mobile device is removed from the physical vehicle, data may remain within the digital storage of the system. Such stored data can be used to identify locations, victims, witnesses, associates, and co-conspirators and may include communications and images of criminal activity. In sum, a forensic examination of a motor vehicle's infotainment and telematics systems may reveal the vehicle's GPS location information, movements, operations, and user data at critical moments before, during, and after the commission of a crime.

k. As previously stated, the Vehicle is a 2006 Lexus ES 330. To complete a forensic extraction from the Vehicle, it may be necessary, temporarily, to remove trim and other components of the Vehicle to access the information subject to search. It may also be necessary to repair the

device, replace the screen, reconnect wires, and replace batteries. It may be necessary to employ advanced forensic processes to bypass locked display screens and other data access restrictions. Advanced processes may include potentially destructive forensic techniques used to remove memory chips from computers and other electronic storage containers that may be found within the Vehicle. In the event that potentially destructive processes are required to perform this extraction, parts of the Vehicle may be destroyed and rendered useless.

l. Furthermore, it may be necessary to return to the Vehicle and reconnect the infotainment and telematics systems to the Vehicle's power source to perform the extraction using forensic software. This is because there are various computer networks working simultaneously when a vehicle is powered on, and in some vehicles, the infotainment and telematics systems require the other networks to work in tandem to complete the data extraction.

m. The requested warrant authorizes a later review of the media and information seized or copied from the Vehicle, which review may continue past the date required for execution of the warrant.

## Technical Background Information Regarding the Vehicle and its Electronic Control Modules and Event Data Recorders

16. Motor vehicles contain various electronic control modules (also called electronic control units). An electronic module, or electronic control unit, is an electronic computer system that monitors, regulates, and controls a specific function within the vehicle. For example, an engine control module is responsible for electronically monitoring, regulating, and controlling a vehicle's engine, and an airbag control module (or sensor) is responsible for monitoring, regulating, and controlling the vehicle's airbag deployment system. The average vehicle contains dozens of electronic control modules that regulate various vehicle functions.

17. Vehicle manufacturers place event data recorders within one of their vehicle's electronic control modules. Event data recorders collect pre-collision data which often includes the vehicle's pre-collision speed, braking status, the percent of the vehicle's throttle engagement, as well as other collision-related data. Individual manufacturers place their collision recording equipment in separate locations (within separate electronic control modules) and use different terminology to refer to the modules where the collision data is stored. The modules' names include Supplemental Restraint System Control Modules, Engine Control Modules, Airbag Electronic Control Units, Airbag Control Modules, Restraint Control Modules, Sensing Diagnostic Modules, Occupant Restraint Controllers, or Sophisticated Airbag Sensor Modules. Regardless of the terminology used to describe the event data recorder, and the module where the event data recorder is located, event data recorders can collect pre-collision data from their vehicles and that the data can be retrieved by the appropriate software.

18. The data contained within these modules can be imaged/copied and the data retrieved from their event data recorders may be interpreted. This information is useful to the those trained in crash reconstruction to examine the collision and determine the collisions' causes.

19. The equipment utilized can communicate with the modules without removing the modules from the vehicle; however, certain collisions destroy the vehicle to the point the module must be removed and communicated with in a method known as Direct to Module (D.T.M.).

20. Various devices contained in vehicles may contain pre-trip travel patterns leading up to a collision. Cellular devices, global positioning system (G.P.S.) devices, fleet management systems, and many other electronic devices can record travel patterns, speeds and possible distracting occurrences of the operator. These devices, and the data contained inside, are useful to collision investigators in determining pre-trip events and locations where the vehicle may have stopped before the collision and any distractions which could have contributed to the collision.

21. When vehicles collide with objects and a significant change of speed occurs, that the vehicle may be deformed, causing the glass to break, metal and plastic parts to bend and break, transferring a variety of evidence to the opposing object. Trademark deformations are made that allow vehicles to be compared to the object causing the damage. When humans are struck by motor vehicles, various evidence may be located on and under the vehicle. Items to indicate contact with the vehicle during an impact include, but are not limited to; body fluids, hair,

fingerprints, blood, semen, saliva, physiological fluid, secretions, hair, fibers, latent prints, shoe prints, clothing, and other garments, dirt, dust, soil, glass, metal, pain and plastic fragments, items containing traces of any of the preceding articles on the exterior of the vehicle.

22. This information and information obtained from digital media and service records are used in conducting criminal investigations to determine the causation and contributing factors of a collision.

23. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage data that reasonably appear to contain some or all of the evidence described in the warrant and would authorize a later review of the data information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

### Conclusion

24. Based on the information set forth in this affidavit, I respectfully submit there is probable cause to believe the vehicle described in Attachment A that is located at Dunlap Wrecker, 410 West 5th Street, Claremore, Oklahoma 74017 contains evidence of violations of Title 18 United States Code, Sections 1151, 1152, and 1112 (Involuntary Manslaughter in Indian Country). The items listed in Attachment B are evidence of the foregoing offense. I respectfully request that this

Court issue a search warrant authorizing the search of the vehicle described in Attachment A, and the seizure of the items described in Attachment B.

25. I request to be allowed to share this affidavit and the information obtained from this search with any government agency, to include state and local agencies investigating or aiding in the investigation of this case or related matters, and to disclose those materials as necessary to comply with discovery and disclosure obligations in any prosecutions from this matter.

Respectfully submitted,

Thomas S. Huse
Special Agent
FBI

Subscribed and sworn to by phone on February 26, 2025.

MARK T. STEELE
UNITED STATES MAGISTRATE JUDGE

## **ATTACHMENT A**

The property to be searched is the Silver, 2006 Lexus ES 330, bearing VIN JTHBA30G765163694 and Oklahoma license plate QYJ057, currently located at Dunlap Wrecker, 410 West 5th Street, Claremore, Oklahoma 74017.

This warrant authorizes, *inter alia*, the forensic examination of the Vehicle's infotainment, telematics systems, and event data recorders for the purpose of identifying the electronically stored information described in Attachment B.

The vehicle to be searched is described above and pictured below:






## ATTACHMENT B

All items and electronically stored information contained within the location described in Attachment A that involves BRIXEY and relates to violations of Title 18 United States Code, Sections 1151, 1153, and 1112 (Involuntary Manslaughter in Indian Country) on February 8, 2025, including:

I.    Proof of ownership of the vehicle described in Attachment A;

II.    Stored electronic data, information, images, and related digital storage, and/or vehicle diagnostic data from electronic systems within the Vehicle, including, but not limited to:

    a.  unique device identifiers;

    b.  media files;

    c.  call logs;

    d.  contacts;

    e.  SMS;

    f.  Bluetooth connections;

    g.  USB connections;

    h.  voice commands;

    i.  voice recordings;

    j.  voice calling;

    k.  web browser history;

    l.  Wi-Fi connections;

m. speech recognition;

n. time updates;

o. track logs;

p. traction events;

q. traffic updates;

r. stop/start log;

s. GPS warnings;

t. hard acceleration;

u. hard braking;

v. light status;

w. odometer reading;

x. gear shifts;

y. historical navigation data;

z. historical speed data;

aa. historical event data; and

bb. data streaming services and related content.

III.    Photographs of the vehicle, including documentation of any evidence;

IV.    Event Data Recorder(s)/Engine Control Modules/Electronic Control Modules capable of storing data related, but not limited to; a traffic crash, fault codes, hard brake records, and last stop records.

V. Electronic Control Unit diagnostic data, speed and event data, fleet maintenance systems data from the vehicle's telematics and infotainment systems.

VI. Digital media contained on electronic storage devices including, any cellular phones, infotainment systems, global positioning systems, fleet maintenance systems, and other electronic devices capable of storing digital media including, but not limited to, roadways traveled prior to collision, speeds, content of communications, and driving activities of the operator to include the use of electronic devices while the vehicle was moving on February 8, 2025;

VII. Items that may indicate occupant seating positions prior to a collision contact points inside the vehicle during the collision sequence and ejection portals including but not limited to; body fluids, hair, fingernails, fingerprints, blood, semen, saliva, physiological fluid, secretions, fibers, latent prints, shoe prints, shoes, clothing and any items containing traces of any of the preceding articles or items containing traces of any of the preceding articles on the interior of the vehicle.

VIII. Items containing evidence to indicate contact with the vehicle during an impact including but not limited to; body fluids, hair, fingernails, fingerprints, blood, semen, saliva, physiological fluid, secretions, fibers, latent prints, shoe prints, shoes, clothing and any other garments, dirt, dust,

soil, glass, metal, paint and plastic fragments, items containing traces of any of the preceding articles on the exterior of the vehicle.

IX.    Inspection and documentation of the on/off positions of the instrument controls on the interior of the vehicle, inspection of any lamps or bulbs contained on the interior or exterior of the vehicle that may show indications of their use during the collision known as cold/hot shock. Inspection and documentation of the seat belt harnesses, connectors, and webbing to show the use or lack thereof. Inspection and documentation of the tire and wheels to determine the types in use, air pressure to ensure the authenticity of information recovered from any event data records and weighing of the vehicle to determine the total weight by gross, axle and tire points. Inspection and documentation of the braking system of the vehicle. Inspection and documentation of the vehicle's mechanical components necessitates the vehicle's safe operation on a roadway, including front-end components, steering components, braking components, and other mechanical components necessary to operate the vehicle safely.

X.    Papers and receipts showing recent repairs of the vehicle and receipts showing recent locations of the occupant and locations of those purchase could lead to the identification of witnesses regarding the pre-trip events of the occupant—papers and receipts showing dominion of the vehicle.

XI.    Items that may affect a person's ability to operate a motor vehicle safely, including drugs and alcohol; paraphernalia, containers, or packaging

related to drug or alcohol use; and any other evidence indicating the use of drugs or alcohol.

XII.    Inspection of the vehicle's mechanical components, to include: the vehicle's front-end components that support and effectively steers and controls the vehicle to be safely operate upon a public roadway; mechanical components related to the steering and suspension of the front end of the vehicle, to include the tires and wheels, tie rods, suspension arms, joints and applicable attachment components that assist the vehicle operator with safely maneuvering the vehicle.

This warrant authorized a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.